UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY LEWIS HOLDER,

    Petitioner,

v.   Case No. 09-10954

CATHERINE S. BAUMAN,

    Respondent.
    _____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY**

This habeas corpus petition may illustrate better than most the importance of making a contemporaneous accurate record, and the dubious wisdom of judges and attorneys discussing plea bargains and sentencing practices other than in court. Also, it makes clear the dispositive power of unambiguous statements and solemn acknowledgments that are recorded. On March 15, 2009, Petitioner Gregory Lewis Holder filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his plea-based convictions for drug and firearm offenses committed in Genesee County, Michigan. Petitioner alleges that his guilty plea was involuntary and that his trial attorney misled him about the sentence the judge would impose. Respondent Catherine S. Bauman has filed a response in opposition to the petition. The court concludes that Petitioner's sworn statements on the record at his guilty plea amply demonstrate that he understood then that there was, in fact, no off-the-record sentencing deal or similar judicial commitment, and he is not entitled to habeas relief. The petition will be denied.

## I.  BACKGROUND

In 2006, Petitioner was charged in the Genesee County Circuit Court (Case No. 06-18371) with the following eight crimes: (1) conspiracy to possess with intent to deliver 1,000 or more grams of cocaine; (2) possession with intent to deliver 1,000 or more grams of cocaine; (3) felon in possession of a firearm; (4) carrying a concealed weapon; (5) possession of a firearm during the commission of, or attempt to commit, a felony; (6) possession with intent to deliver marijuana; (7) possession with intent to deliver ecstasy; and (8) possession with intent to deliver methamphetamine.  The Court will refer to this state court case as Case A.  Attorney Neil Rockind represented Petitioner in Case A.

In another case in Genesee County Circuit Court (Case No. 06-18335), Petitioner was represented by attorney Jeffrey Skinner and charged with delivery of 50 to 449 grams of cocaine.  The Court will refer to this case as Case B.  In a third case in Genesee County Circuit Court (Case No. 06-18836), Petitioner was charged with delivery of 450 to 999 grams of cocaine.

On January 9, 2007, Petitioner pleaded guilty under oath to counts two, three, and five of Case A.  Those counts charged Petitioner with possession with intent to deliver 1,000 or more grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(i), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of, or attempt to commit, a felony, Mich. Comp. Laws § 750.227b.  Petitioner also pleaded guilty, as charged, to delivery of 50 to 449 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(ii), in Case B.

In exchange for Petitioner's plea, the prosecutor dismissed case number 06-

18836, which charged Petitioner with delivery of 450 to 999 grams of cocaine, and counts one, four, six, seven, and eight of Case A. The prosecutor also agreed not to seek consecutive sentences or sentencing enhancement as a result of Petitioner's status as a habitual offender and repeat drug offender.

Petitioner attempted to withdraw his plea on the date of sentencing, alleging that his anticipated sentence was more than an agreed-upon sentence of two years in prison for the felony firearm conviction and fifteen years in prison for the other crimes. On March 22, 2007, the trial court heard oral arguments and denied Petitioner's motion to withdraw the plea. The trial court then sentenced Petitioner to imprisonment in Case A to 225 to 475 months for possession with intent to deliver 1,000 grams or more of cocaine, one to five years for felon-in-possession of a firearm, and a consecutive term of two years for possession of a firearm during the commission of a felony. The trial court sentenced Petitioner to a concurrent sentence of 99 to 240 months for delivery of 50 to 449 grams of cocaine in Case B.

Petitioner raised his habeas claims in applications for leave to appeal. The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. *See People v. Holder*, No. 278965 (Mich. Ct. App. Aug. 7, 2007); *People v. Holder*, No. 278967 (Mich. Ct. App. Aug. 24, 2007). On December 20, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Holder*, 742 N.W.2d 126 (Mich. 2007); *People v. Holder*, 742 N.W.2d 124 (Mich. 2007).

In March of 2009, Petitioner filed two separate habeas corpus petitions, one for Case A and one for Case B. The petition challenging Case A was given United States

District Court number 09-10954 and assigned to this court. Case B was given United States District Court number 09-10973 and assigned to another judge in this District. After case number 09-10973 was reassigned to this court as a companion case, the court dismissed that case and directed Petitioner to incorporate all his claims in an amended petition filed in case number 09-10954. Petitioner complied with the court's order, and Respondent filed an answer in opposition to the amended petition. The case is now ready to be adjudicated.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

   (1)   resulted in a decision that was contrary to, or involved an
         unreasonable application of, clearly established Federal law,
         as determined by the Supreme Court of the United States; or

   (2)   resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented
         in the State court proceedings.

28 U.S.C. § 2254(d). In addition, "where factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

Petitioner alleges that § 2254(d) does not apply here because the state courts

4

did not address the merits of his claims. It is true that both state appellate courts merely issued one-sentence orders denying leave to appeal. Nevertheless, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. Petitioner presented his claims to the Michigan Court of Appeals and to the Michigan Supreme Court. Neither court stated that Petitioner's claims were barred from review by a procedural error. The Court therefore presumes that the state appellate court orders were adjudications on the merits and that the deference due under § 2254(d) applies here.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786. To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on a claim "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. DISCUSSION

### A. Voluntariness of the Plea

Petitioner contends that his trial attorney informed him that he would receive a sentence of fifteen years for the drug conviction in Case A. Petitioner alleges that, as a result of this incorrect information, his guilty plea was involuntary and a violation of his constitutional right to due process.

Because a guilty plea involves a waiver of constitutional rights, it must be a knowing, voluntary, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States,* 397 U.S. 742, 748 (1970). The defendant must appreciate the consequences of his plea, waive his rights without being coerced, and understand the rights that he is surrendering. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3322 (2010). "A guilty plea can be involuntary as a result of the ineffective assistance of counsel." *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005). But "a 'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats . . . , misrepresentation . . . , or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.'" *Bousley v. United States*, 523 U.S. 614, 619 (1998) (quoting *Brady*, 397 U.S. at 755)). The voluntariness of a plea is determined by considering all the relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749.

At the plea proceeding in this case, the prosecutor thoroughly explained the terms of the plea agreement and specifically stated that there was no sentencing or

*Cobbs*[1] agreement.  Both of the attorneys representing Petitioner assured the trial court that the prosecutor had accurately explained the plea agreement.  (Jan. 9, 2007 Tr., 5-6.)

Petitioner was twenty-nine years old at the time.  The trial court informed him of the maximum penalty for each of the offenses to which he was pleading guilty.  Petitioner testified that he understood the plea agreement and agreed with it.  Petitioner stated, as had his two attorneys, that no promises had been made to him, other than those which resulted from the plea bargaining process and which were stated there on the record.  Petitioner said that it was his own choice to plead guilty and that his plea was freely, understandingly, and voluntarily made.  He maintained that there had been no undue influence, compulsion, or duress used against him to force him to plead guilty, and he said that he was pleading guilty because he was guilty.  (*Id.* at 6-12.)

The record, as summarized above, shows that Petitioner entered his plea of guilty with sufficient awareness of all the relevant circumstances and the likely consequences.  There is no support in the transcript of the plea proceeding for Petitioner's contention that he was promised a sentence of fifteen years for the drug offense.  His possible subjective belief that he would receive such a sentence on the drug charges must be disregarded because "the record as a whole shows no objective basis for the belief."  *Carwile v. Smith*, 874 F.2d 382, 384 (6th Cir. 1989).  If this court

---

[1] *See People v. Cobbs*, 505 N.W.2d 208, 212 (Mich. 1993) (acknowledging that, "[a]t the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense") (emphasis omitted).

were to rely on Petitioner's subjective impression that there was such an agreement, the court "would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). "This [the court] will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before [the court]." *Id.*

Petitioner's "[s]olemn declarations in open court" that his plea was freely, understandingly, and voluntarily made, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, the court rejects Petitioner's allegation that his guilty plea was involuntary due to allegedly being informed that he would receive a sentence of fifteen years for the drug conviction in Case A.

### B. Trial Counsel

Petitioner alleges in a related claim that his trial attorney was constitutionally ineffective for leading him to believe that his sentence would be fifteen years on the drug count in Case A with an additional two years for the felony firearm count. Petitioner claims that he would have gone to trial had it not been for his attorney's misinformation.

"A failure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003) (citing *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001)). However, under *Strickland v. Washington,* 466 U.S. 668, 687 (1984), a petitioner must demonstrate "that counsel's performance was deficient" and "that the

8

deficient performance prejudiced the defense." In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

In a sentencing memorandum filed in the trial court, attorney Neil Rockind retrenched from his statements at the guilty plea proceeding and alleged that, during plea negotiations, the trial court had agreed to sentence Petitioner to fifteen years plus two additional years for the felony firearm offense. (*See* Mar. 22, 2007 Tr., 17.) Rockind goes on to say in his memorandum that, in reliance on the trial court's representations, he informed Petitioner that he would receive a minimum sentence of seventeen years (fifteen years for the principal charges and two years for the felony-firearm charge).

Petitioner's other trial attorney, Jeffrey Skinner, stated in an affidavit he filed in the trial court that he recalled the trial court saying fifteen years plus two years for the felony firearm charge was "reasonable." (*Id.*) Skinner's affidavit said also that the trial court had "no difficulty" with the proposed sentence and that the court asked the parties for a reminder before sentencing. (*Id.*) At the March 22, 2007 hearing, attorney Skinner said that in view of Petitioner's recent remarks, "I feel like now . . . I need to take a defensive position . . . and start making a record" of efforts to counsel Petitioner. (*Id.* at

6.) Attorney Skinner also stated on the record that "a year from now I'm going to be sitting in that witness chair and there's going to be a SADO attorney standing here, and . . . I don't need that aggravation." (*Id.*)  Defense attorney Rockind minutes later explained that he had "done a lot of soul-searching" and that in his filings in support of Petitioner he was attempting "to be honest with the court as to how we saw things." (*Id.* at 6-7.)

Petitioner relies on Rockind's and Skinner's recollection that there was an off-the-record agreement to sentence him to a total of seventeen years in prison.  Standing in the way of the attorneys' point of view, however, is the recorded plea proceeding in which Mr. Cassady, the assistant prosecutor specifically stated, among other things, that there was *no* sentencing agreement.  (Jan. 9, 2007 Tr. 5.)  The defense attorneys each concurred.  (*Id.* at 6.)  Immediately after prosecutor said that there is no *Cobbs* or sentence agreement, the trial court asked each defense attorney, in turn, "has Mr. Cassady accurately stated the plea agreement? (*Id.*)  Attorney Skinner in response said, "he has," and attorney Rockind said "yes." (*Id.*)

When the trial court asked Petitioner whether he was saying that no other promises had been made to him other than those stated on the record, Petitioner replied in the affirmative.  (*Id.* at 10-11.)  Petitioner is simply bound by the statements he made in response to the court's inquiry during the plea colloquy.  *Ramos*, 170 F.3d at 566.  At the March 22, 2007 hearing, there was no explanation offered by the attorneys casting doubt on their stated agreement with Cassady's assertion that there were no sentence deals.  If Petitioner is bound by his statements under oath, it would seem only equitable that officers of the court—even though they were not required to testify under

oath as was the Petitioner—should be equally bound by their admissions on the same record. But even if they are not, their client is. *United States v. Johnson*, 752 F.2d 206, 210-11 (6th Cir. 1985) ("Statements of an attorney that are directly related to the litigation at hand have been held to be within the attorney's scope of authority and binding on the client.").

Furthermore, a minimum sentence of fifteen years would have been less than the suggested sentencing guidelines range. At the hearing on Petitioner's motion to withdraw his plea, the trial judge explained that he may have agreed to a sentence at the bottom of whatever the sentencing guidelines turned out to be. ( Mar. 22, 2007 Tr., 18.)

> Now what I recall about the discussion that had was that we there was some discussion that was had about what possible sentence Mr. Holder would have; and I am certain that what I said to you guys is that I don't have a problem with sentencing him at the bottom end of the guidelines; that's what I normally will say, whatever those guidelines are; and I may have asked, what the guidelines and, um, I'm not recalling what was represented to me in terms of what the guidelines were, but if it was represented that the—that the minimum was fifteen years, then that would be a representation that counsel would have made to me; and that's where Mr. Skinner is hearing the fifteen years and two and maybe that's where you come up with it, also, Mr. Rockind, because I probably asked, well what are his guidelines, which is my normal, typical practice . . . .

(*Id.* at 18-19.)

But the trial court stated that it "knew for a fact" that it did not agree to sentence Petitioner below the sentencing guideline range because the court "would never enter into an agreement to sentence someone below the guideline range knowing that there are no circumstances that I can state on the record to justify deviating below without the prosecutor's permission." (*Id.* at 18)

11

> [T]he Court cannot sit here and say its gonna sentence someone below the guideline range without getting permission from the prosecutor or some kind of agreement, unless the Court is convinced that it has substantial and compelling reasons to deviate below the guideline range. And, when you look at this case, there just are no reasons under any circumstances to deviate below the guidelines.
> So the Court knows for a fact—its not that I don't recall, it's not that I'm guessing, this Court knows for a fact that it did not agree to sentence the Defendant below the guideline range; that's just not my practice. It just never happened; and that the whole time I've been on this Bench, unless I've got permission from the prosecutor—so I know that did not happen.
>
> . . .
>
> I don't really see a basis to allow him to withdraw his plea, because, as Mr. Cassady has already indicated, the plea that was taken on the record, the transcript says what it says what it says; and it's clear that the court never agreed to any sentence agreement other than I probably did tell you I would sentence him at the bottom of the guidelines, which to me seem to be fair, given the whole situation, unless I could—get some other agreement from the prosecutor's office, which apparently never happened.

(*Id.* at 20-21.) The court concluded by stating, "[T]hat's what happened, and that was . . . what should have been represented to Mr. Holder; and, in [the court's] opinion, probably . . . what was represented to Mr. Holder." (*Id.* at 21.)

The trial court's factual findings as to what occurred during the plea proceeding were clearly stated, pointedly unequivocal on the relevant points, and may "not be disturbed unless there was an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' § 2254(d)(2), or unless the habeas petitioner demonstrates the factual findings incorrect by 'clear and convincing evidence,' § 2254(e)." *Cooey v. Coyle*, 289 F.3d 882, 907 (6th Cir. 2002). Here, the court has on the one hand unequivocal statements by the trial judge, against statements on the other hand made in affidavits by Petitioner's attorneys, one of whom felt "defensive" and the

other sought to present his "recollection" running to the contrary of the trial judge's.

On this record, Petitioner has failed to demonstrate by clear and convincing evidence that the trial court's factual findings are incorrect.  The record of the plea proceeding does not support his claim that there was an agreement to sentence him to fifteen years plus two years for the felony firearm conviction.  Although this court recognizes that the defense attorneys may have believed they heard something hopeful in terms of a sentence prediction, the weight of the evidence supports a conclusion that there was no agreement.  Neither they nor the Petitioner can escape the force of a clearly stated record of the proceedings.

The court defers to the trial court's conclusion that there was no agreement to sentence Petitioner to a total of seventeen years in Case A.  The court also defers to the trial court's conclusion that trial counsel in all likelihood correctly represented the terms of the plea agreement, as set forth on the record, to Petitioner.  Trial counsel was not ineffective, and the state appellate courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, *Strickland v. Washington* or *Hill v. Lockhart*.

## IV.  CERTIFICATE OF APPEALABILITY

For Petitioner to seek review of this court's decision, a Certificate of Appealability ("COA") must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  For a COA to issue, Petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *See Slack v.*

*McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Having considered the matter, this court finds that reasonable jurists could debate its assessment of Petitioner's habeas claims and will grant a COA on both claims presented in this case.

## V.  CONCLUSION

The state appellate courts' rejection of Petitioner's claims did not result in decisions that were contrary to clearly established federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Accordingly,

IT IS ORDERED that Petitioner's amended petition for a writ of habeas corpus [Dkt. #16] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED on both habeas claims presented in this case.

     s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 31, 2011, by electronic and/or ordinary mail.

     s/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522